IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

JACQUELINE LOPEZ,          )
                           )
              Plaintiff,   )      **CIVIL ACTION**
                           )
v.                         )      No.  05-1093-MLB
                           )
DILLARD'S, INC.,           )
                           )
              Defendant.   )
                           )

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to dismiss for lack of subject matter jurisdiction and to compel arbitration. (Doc. 3)  The matter has been fully briefed and is ripe for decision. (Docs. 4, 10, 11.)  Defendant's motion is DENIED for reasons set forth herein.

**I.   INTRODUCTION**[1]

Plaintiff was employed by defendant in Wichita, Kansas.  At all relevant times, plaintiff was also a member of the National Guard. In October, 2003, while employed by defendant, plaintiff received notice that she was being called to active duty to serve in Iraq. Defendant informed plaintiff that her job would be waiting for her when she returned.  Plaintiff deployed in January, 2004, and returned in March, 2004.  However, defendant forced her to reapply for her old position; and, although defendant has hired other individuals to fill plaintiff's former role, defendant has never hired plaintiff back in

---

[1] For purposes of this motion, the court accepts the facts as alleged by plaintiff in her complaint and in her brief.  Defendant does not dispute them and, moreover, they are not material since this motion essentially presents a pure question of law.

her former position, nor in any other capacity.  (Docs. 1 at 2-3; 10 at 1-2.)

As a result, plaintiff filed the present action seeking relief under the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), 38 U.S.C. §§ 4301-4334.  Plaintiff claims that under the USERRA, she was entitled to return to her previous position upon release from active duty.  Rather than respond to the complaint, defendant filed the instant motion seeking dismissal and asking the court to compel arbitration pursuant to an agreement reached between the parties when plaintiff was initially hired.  Plaintiff responds that the USERRA supersedes and renders unenforceable the arbitration agreement, at least as to her present claim, and allows her to proceed directly in the district court under 38 U.S.C. § 4323.

**II.  ANALYSIS**

The issue of whether the USERRA renders unenforceable an otherwise valid agreement to arbitrate employment disputes is a matter of first impression in this circuit.  In fact, it appears that there is only one reported case addressing this question.  See Garrett v. Circuit City Stores, Inc., 338 F. Supp. 2d 717 (N.D. Tex. 2004). Accordingly, the court is writing on a relatively clean slate in deciding this motion.  Garrett concluded that claims brought under the USERRA were not subject to an otherwise valid arbitration agreement. Id. at 722.  This court agrees.

The arbitration agreement at issue here is governed by the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16.  The Supreme court summarized the purpose and history of that act as follows:

> The FAA was originally enacted in 1925, 43 Stat.

> 883, and then reenacted and codified in 1947 as Title 9 of the United States Code. Its purpose was to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts. Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 219-220, and n. 6, 105 S.Ct. 1238, 1241-1242, and n. 6, 84 L.Ed.2d 158 (1985); Scherk v. Alberto-Culver Co., 417 U.S. 506, 510, n. 4, 94 S.Ct. 2449, 2453, n. 4, 41 L.Ed.2d 270 (1974). Its primary substantive provision states that "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4. These provisions manifest a "liberal federal policy favoring arbitration agreements." Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983).

Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24-25, 111 S. Ct. 1647, 1651, 114 L. Ed. 2d 26 (1991) (alterations in original). Moreover, it is well-established that these principles apply to agreements to arbitrate employment-related disputes. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 123, 121 S. Ct. 1302, 1313, 149 L. Ed. 2d 234 (2001).

In deciding a motion to compel arbitration, the court engages in a two-step inquiry. Williams v. Imhoff, 203 F.3d 758, 764 (10th Cir. 2000) (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S. Ct. 3346, 3355, 87 L. Ed. 2d 444 (1985). "The first task of a court asked to compel arbitration of a

dispute is to determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors, 473 U.S. at 626, 105 S. Ct. at 3353. If this initial requirement is satisfied, then the second part of the inquiry asks "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." Id. at 628, 105 S. Ct. at 3355.

Here, plaintiff expressly concedes that the parties have a valid arbitration agreement which, absent any preemption by the USERRA, would apply to the claims presented in this case. (Doc. 10 at 2.) Indeed, the arbitration agreement specifically identifies claims arising under the Veterans Reemployment Rights Act (VRRA) as indicative of the type of claims that the parties were agreeing to arbitrate. (Doc. 4 exh. A at 2.) The VRRA was one in a series of acts that provided re-employment rights to veterans, and was the predecessor to the USERRA. See Beverly L. Jacklin, Annotation, Sufficiency of Veteran's Application for Re-employment under 38 U.S.C.A. §§ 2021 et seq., 103 A.L.R. Fed. 575 § 1 (2004). Thus, resolution of this motion turns on the second part of the Mitsubishi Motors test: whether the USERRA is an external legal constraint that forecloses arbitration of plaintiff's claims.

The answer to this question is controlled by 38 U.S.C. § 4302(b), which states,

> This chapter supersedes any State law (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit.

-4-

In interpreting this provision, the court finds the preceding subsection instructive:

> Nothing in this chapter shall supersede, nullify or diminish any <u>Federal or State law</u> (including any local law or ordinance), contract, agreement, policy, plan, practice, or other matter that establishes a right or benefit that is more beneficial to, or is in addition to, a right or benefit provided for such person in this chapter.

38 U.S.C. § 4302(a) (emphasis added).  As the underlined words demonstrate, Congress expressly referred to federal law when specifying those laws that would not be affected by enactment of the USERRA.  By contrast, subsection (b) declares that the USERRA will only supersede those <u>State</u> laws that would limit the rights or benefits conferred by the act.  Accordingly, Congress clearly did not intend for the USERRA to supersede the FAA.  Hence, the FAA and its supporting case law remain applicable, despite the protections and procedures wrought under the USERRA.

Nonetheless, section 4302(b) unequivocally states that the USERRA supersedes any <u>contract</u> or <u>agreement</u> "that reduces, limits, or eliminates in any manner any right or benefit provided by this chapter, including the establishment of additional prerequisites to the exercise of any such right or the receipt of any such benefit."  Although the FAA was not superseded by this provision, the FAA is inapposite unless invoked by a written agreement to arbitrate.  <u>See</u> 9 U.S.C. § 2.  Here, it is undisputed that the parties had a written agreement to arbitrate the claims at issue in this case.  The only question is whether that agreement limited plaintiff's rights as proscribed by section 4302(b).

A review of the arbitration agreement, along with the rules that

-5-

it incorporates, shows that plaintiff would not be giving up any substantive rights by having her claim arbitrated. (Doc. 4 exhs. A and B.) Specifically, the applicable arbitration rules provide that

> The arbitrator will apply the state or federal substantive law which would be applied by a United States District Court sitting where events giving rise to the claim took place. The arbitrator has the authority to interpret and apply federal, state and/or local statutes and common law which govern [plaintiff's] and [defendant's] respective claims and defenses. The arbitrator does not have the authority to enlarge upon or add to, subtract from or disregard, or otherwise alter [plaintiff's] or [defendant's] under such laws.

(Doc. 4 exh. A at 9.) In other words, the arbitrator is to apply the same substantive law, and is empowered to grant the same relief, as the court could in deciding plaintiff's case. Furthermore, the arbitration rules specifically authorize the arbitrator to grant a prevailing party fees and costs, including attorney's fees, if permitted by law. Id. Thus, the agreement does not reduce, limit, or eliminate any of the substantive rights or benefits granted by the USERRA.

That conclusion notwithstanding, it is clear that Congress did not intend to limit the sweep of section 4302(b) to substantive rights and benefits. Specifically, that subsection supersedes any agreement that imposes additional "prerequisites to the exercise of any . . . right or the receipt of any . . . benefit" provided by the act. The arbitration agreement does just that. It mandates that before exercising her rights under USERRA and obtaining the relief to which she is entitled thereunder, plaintiff must participate in an arbitration proceeding. Nowhere in the USERRA did Congress provide

for arbitration as a means to obtain the rights granted in that act. Instead, Congress stated that a person aggrieved under the act can, but need not, seek assistance from the Secretary of Labor and the United States Attorney General in resolving the dispute. 38 U.S.C. §§ 4322, 4323(a). In addition to, or as an alternative to, those avenues of relief, an aggrieved person is authorized to bring a civil action in an appropriate United States District Court. 38 U.S.C. § 4323(b).

The arbitration agreement at issue here mandates that plaintiff seek relief in an arbitral forum. Since that type of proceeding was not addressed in the USERRA, it stands as an additional prerequisite to the exercise of plaintiff's rights and the receipt of any benefits to which she might be entitled under the act. Hence, the plain language of 38 U.S.C. § 4302(b) requires that the arbitration agreement be superseded by the USERRA.[2]

---

[2] Plaintiff also urges the court to consider a committee report from the House of Representatives regarding interpretation of section 4302(b). That report states, in relevant part,

> Section 4302(b) would reaffirm a general preemption as to State and local laws and ordinances, as well as to employer practices and agreements, which provide fewer rights or otherwise limit rights provided under amended chapter 43 or put additional conditions on those rights. . . . Moreover, this section would reaffirm that <u>additional resort to mechanisms such as grievance procedures or arbitration or similar administrative appeals is not required</u>.

H.R. Rep. No. 103-65, at 20 (1993) (emphasis added). While that language offers additional support for the court's conclusion, the Supreme Court has just recently put forth a stern reminder of the potential for abuse in drafting legislative history. See Exxon Mobil Corp. v. Allapattah Sers., Inc., ___ U.S. ___, 2005 WL 1469477, at *14-*17 (June 23, 2005). Finding that the language of the statute is plain and unambiguous, the court need not resort to legislative

Defendant argues against this conclusion, citing examples of other federal employment statutes that <u>are</u> subject to legitimate arbitration agreements.[3] (Doc. 11 at 9-11.) However, defendant points to no provisions in those acts, nor has the court found any, that make such sweeping statements about superceding any laws or agreements that undermine the goals of the enactment. See, e.g., Fair Labor Standards Act of 1938, 29 U.S.C. § 218 (discussing construction of the act with state and federal laws); Age Discrimination in Employment Act of 1967, 29 U.S.C. § 533 (same); Family and Medical Leave Act of 1993, 29 U.S.C. § 2651 (same); Civil Rights Act of 1964, 42 U.S.C. 2000h-4 (discussing construction of the act, including Title VII, with state laws); Americans with Disabilities Act of 1990, 42 U.S.C. § 12201 (discussing construction of the act with state and

---

history. See id. at *15.

[3] Defendant also aggressively argues against the court's conclusion that the plain language of section 4302(b) supercedes this arbitration agreement. (Doc. 11 at 4-7.) The court cautions defendant regarding its repeated misuse of Supreme Court precedent in that argument. Three times in those four pages defendant cited to the dissenting opinion in E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 295, 122 S. Ct. 754, 765, 151 L. Ed. 2d 755 (2002), as if it were the majority opinion. (Doc. 11 at 5, 7.) Furthermore, in a later section of its brief, defendant comes precariously close to misrepresenting the holding in Waffle House. On page 10 of its reply brief, defendant includes the following in a string citation: "Waffle House, 534 U.S. at 289 (ADA claims are subject to compulsory arbitration)." A review of that reference shows no such statement. Moreover, that was not the holding in Waffle House. To the contrary, in Waffle House, the Supreme Court found that an arbitration agreement was <u>not enforceable</u> against the Equal Opportunity Employment Commission when that agency was not a party to the agreement. Waffle House, 534 U.S. at 297-98, 122 S. Ct. at 766. The court assumes that defendant's conduct was unintentional. Nonetheless, defendant is cautioned against making such oversights in the future.

-8-

federal laws). Indeed, none of these acts contain any statement that remotely approaches the sweep of 38 U.S.C. § 4302(b), with its focus on not only trampling any state law, contract, or agreement that diminishes any rights or benefits protected by the USERRA, but with the additional emphasis on striking down any "prerequisites" to the exercise of those protected rights. Cf. Garrett, 338 F. Supp. 2d at 722. If the reference to prerequisites is to be given some meaning apart from preserving plaintiff's substantive rights under the act (which it must in order to avoid rendering that language mere surplusage), it must be construed as invalidating procedural changes not authorized by Congress. Defendant's arguments to the contrary are accordingly rejected.

It is clear from its brief that defendant's sole basis for challenging the court's subject matter jurisdiction is the arbitration agreement. Finding that agreement superseded by the USERRA, the court concludes that it has subject matter jurisdiction under 28 U.S.C. § 1331 and 38 U.S.C. § 4323(b)(3). Defendant's motion to dismiss for lack of subject matter jurisdiction is therefore DENIED. Likewise, defendant's motion to compel arbitration is DENIED for the reasons previously discussed.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider

and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

    IT IS SO ORDERED.

    Dated this <u>18th</u> day of August 2005, at Wichita, Kansas.

                                      <u>s/   Monti Belot</u>
                                      Monti L. Belot
                                      UNITED STATES DISTRICT JUDGE